UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**TURENA ZELENAK**,

        Plaintiff,

  v.

**COMMISSIONER OF SOCIAL SECURITY**,

        Defendant.

Case No. 5:12 CV 2733

Magistrate Judge James R. Knepp II

MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Turena Zelenak seeks judicial review of Defendant Commissioner of Social Security's decision to deny Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The district court has jurisdiction under 42 U.S.C. § 405(g) and § 1383(c)(3). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 13). For the reasons given below, the Commissioner's decision denying benefits is affirmed.

### PROCEDURAL BACKGROUND

On December 30, 2009, Plaintiff filed applications for DIB and SSI claiming she was disabled due to back and leg pain and difficulty standing. (Tr. 154, 124-28, 129-32). She alleged a disability onset date of July 4, 2009. (Tr. 125, 129). Her claims were denied initially (Tr. 74-79) and on reconsideration (Tr. 82-86). Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 68, 123). Plaintiff, represented by counsel, and a vocational expert (VE) testified at the hearing, after which the ALJ found Plaintiff not disabled. (*See* Tr. 28, 39). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the

Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. On November 1, 2012, Plaintiff filed the instant case. (Doc. 1).

**FACTUAL BACKGROUND**

Personal and Vocational History

Born on April 25, 1957, Plaintiff was 54 years old when the ALJ made his determination on August 17, 2011. (Tr. 45, 124, 129). Plaintiff attended school until either the eighth (Tr. 45) or tenth grade (Tr. 155) and has past relevant work experience as a cashier (Tr. 47, 58, 160, 177, 179-84).

Plaintiff lived with her daughter and performed household chores, such as washing dishes, doing laundry, vacuuming, and sweeping. (Tr. 54, 222). She managed her own personal care, cooked meals, and took her grandson to football and baseball practice. (Tr. 54).

Medical Evidence Before the ALJ

On February 8, 2010, Plaintiff underwent a consultive examination with Dr. Mary-Helene Massullo. (Tr. 226-34). Plaintiff reported back and leg pain and said she could not stand for long periods of time. (Tr. 226). She rated her performance of daily activities as "fair" and said she could drive, despite testifying to the contrary. (*Compare* Tr. 227, *with* Tr. 46, 54). She was five-feet four-inches tall and weighed 268 pounds. (Tr. 227). Plaintiff denied the use of ambulatory devices and said she took over-the-counter Aleve for pain. (Tr. 226-27).

An examination revealed a normal gait; no joint swelling; no restrictions of motion; no abnormalities in her back, muscles, or bones; and a fair to poor squat. (Tr. 228-29). She had full strength in her shoulders, elbows, wrists, fingers, hips, knees, and feet. (Tr. 231). There was no evidence of muscle atrophy or spasms. (Tr. 232). She was diagnosed with obesity, tobacco abuse, and history of drug use. (Tr. 229). According to Dr. Massullo, Plaintiff appeared "to be able to do

2

work related activities such as sitting, walking, lifting, carrying, handling objects, hearing, speaking[,] and traveling" but she should avoid strenuous physical activity such as climbing. (Tr. 230). She also noted Plaintiff's posture appeared to be slightly compromised while standing because of her obesity. (Tr. 230).

Dr. Massullo ordered radiology reports which revealed degenerative disc disease, spondylosis, and mild anterolisthesis L4 on L5. (Tr. 236).

On March 23, 2010, state agency physician Cindi Hill, M.D., reviewed Plaintiff's medical evidence and assessed her physical residual functional capacity (RFC). (Tr. 237-44). She found Plaintiff could perform medium work because she could lift or carry up to 50 pounds occasionally and 25 pounds frequently, and sit, stand, or walk for six hours in an eight-hour workday. (Tr. 238-39). However, she should never climb ladders, ropes, or scaffolds. (Tr. 239). Despite Plaintiff's complaints of pain and degenerative disc disease diagnosis, Dr. Hill discussed objective tests which showed Plaintiff had a normal gait, normal range of motion, and normal strength. (Tr. 238). She also noted Plaintiff had "not sought treatment in many years." (Tr. 238). On May 22, 2010, Dr. W. Jerry McCloud affirmed Dr. Hill's assessment. (Tr. 245).

Plaintiff sought treatment with Dr. Anthony Costa on June 29, 2010. (Tr. 248). He noted some tenderness in the lumbar spine region and some pain in the neck area, but the remainder of the exam was generally unremarkable. (Tr. 248). On July 20, 2010, she returned to Dr. Costa and an examination revealed normal findings. (Tr. 247). An examination on August 24, 2010, was also unremarkable. (Tr. 246). Dr. Costa prescribed medication and referred Plaintiff to pain management. (Tr. 246-48).

Plaintiff began treatment with Matthew D. Baltes, D.O., in September 2010. (Tr. 261).

Although Plaintiff reported chronic pain, Dr. Baltes noted Plaintiff was in no apparent distress and had no edema, and a review of symptoms was "[o]therwise unremarkable". (Tr. 261). He noted she was using muscle relaxers which provided "a modest benefit." (Tr. 261). He ordered diagnostic tests, prescribed medication, and instructed her to follow up in two months. (Tr. 261).

An MRI of Plaintiff's lumbar spine taken October 4, 2012 revealed multilevel degenerative disc disease, most prominent at L2-L3, with straightening of lordosis; L2-L3 disc bulge with mild thecal sac and minimal foramina narrowing; minimal anterolisthesis of L4 on L5 with associated minimal disc bulge; and mild left-sided and moderate right-sided neural foramina narrowing. (Tr. 269-70). An MRI of Plaintiff's cervical spine revealed mild multilevel degenerative disc desiccation with nonspecific straightening of cervical lordosis and C4-C5 disc bulge without spinal cord flattening. (Tr. 271).

On October 4, 2010, Plaintiff presented to Robinson Rehab Center and Sports Clinic. (Tr. 285). Plaintiff rated her pain as an eight (out of ten) on a typical day but said medication and heat helped control her pain. (Tr. 285). On examination, her strength was generally rated as a four (out of five) but she exhibited decreased range of motion in her cervical spine, positive straight leg raising, and an antalgic gait. (Tr. 286-87). Her rehabilitation potential and prognosis were rated as good to fair. (Tr. 285).

Plaintiff returned to Dr. Baltes approximately six times between October 10, 2010 and April 18, 2011. (Tr. 256-60). Plaintiff complained of chronic pain but her physical examinations were generally unremarkable. (Tr. 256-60).She was well developed, in no apparent distress, and had no edema. (Tr. 256-60). Dr. Baltes noted Plaintiff's MRIs showed arthritic changes and she was seeing Dr. Mehta for pain management. (Tr. 260).  In November 2010, Plaintiff said she received an

4

epidural shot which provided "significant pain relief". (Tr. 259).

In November 2010, Plaintiff went to the Western Reserve Spine and Pain Institute (Western Reserve) for chronic pain in her neck, arms, shoulders, and back. (Tr. 289-91). She reported her pain was a ten (out of ten) and was worse when standing or walking but better when sitting or changing positions. (Tr. 289). An examination revealed a normal gait, normal sensation, and full range of motion and muscle strength in her upper and lower extremities, but positive straight leg raise testing on her right at 30 degrees and a positive FABER sign bilaterally. (Tr. 291-93). She had moderate generalized tenderness in the lumbar area, mildly restricted movement in all directions, and pain on lumbar flexion but normal stability, strength, and tone. (Tr. 291).

On November 12, 2010, Plaintiff returned to Western Reserve for an epidural injection. (Tr. 295-96). Following the procedure, Plaintiff rated her pain as a two (out of ten). (Tr. 298). Plaintiff returned for additional injections on November 19, 2010, and December 22, 2010. (Tr. 300-03, 305-08). Again, she reported significant improvement. (Tr. 303, 306).

She continued treatment at Western Reserve in 2011 and despite reporting continued neck and back pain, she said she was "satisfied with her pain management." (Tr. 318, 310-318). She also stated medication "help[ed] take the edge off the pain and allow[ed] her to maintain her [activities of daily living]." (Tr. 318, 310, 331). Examinations generally revealed an intact gait[1] and normal strength and tone but some mild to moderate tenderness. (Tr. 311-12, 316, 320, 325, 329). Straight leg raise testing was also negative. (Tr. 325, 334).

ALJ Decision

The ALJ found Plaintiff had the severe impairments of multilevel degenerative disc disease

---

1. On one occasion she had an antalgic gait. (Tr. 325).

of the lumbar and cervical spines and morbid obesity, and concluded these impairments did not meet or medically equal a listed impairment. (Tr. 30-31). The ALJ also found Plaintiff had the RFC to perform a limited range of light work which restricted Plaintiff from climbing ropes, ladders, or scaffolds; occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, or crawling; and frequent, but not constant, reaching in all directions with both upper extremities. (Tr. 31). Based on VE testimony, the ALJ found Plaintiff could perform her past relevant work as a cashier. (Tr. 34).

Evidence Submitted to Appeals Council

After the ALJ's August 2011 decision, Plaintiff filed a request for review and submitted additional evidence for the Appeals Council to consider. (Tr. 23).

On July 6, 2011, Dr. Mehta completed a physical capacity assessment. (Tr. 344-35). He found Plaintiff was limited to lifting fifteen pounds occasionally and ten pounds frequently; standing, walking, or sitting no more than four hours in an eight-hour workday; occasional climbing, balancing, and stooping; rare crouching, crawling and kneeling; occasional reaching, pushing, and pulling. (Tr. 344). Dr. Mehta found she would need a sit/stand option and additional breaks throughout the day. (Tr. 345). He noted Plaintiff experienced moderate pain and he had prescribed a TENS unit. (Tr. 345).

Also included with this evidence was a letter to Dr. Mehta from Western Reserve dated August 24, 2011, which indicated Plaintiff did not wish to continue with physical therapy after one session because "she [wa]s 'doing fine.'" (Tr. 354-55). Plaintiff also submitted progress notes from Western Reserve which showed continued complaints of pain, but relief with injections and medication. (Tr. 356, 360). Again, examinations generally revealed an intact gait and normal

6

strength and tone but some mild to moderate tenderness. (Tr. 358, 362-63, 369). In June 2011, an EMG and nerve conduction study were normal and revealed no evidence of lumbar radiculopathy, peripheral nerve entrapment, or neuropathy. (Tr. 365-68).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for SSI and DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), § 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows

a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff argues the ALJ's RFC assessment was flawed because the evidence before him was inconsistent and inconclusive. (Doc. 14, at 7-8). Therefore, Plaintiff claims the ALJ should have requested an updated consultive examination or obtained medical expert testimony. (Doc. 14, at 7-8). Plaintiff also argues Dr. Mehta's physical capacity assessment constituted new and material

evidence warranting remand. (Doc. 14, at 9-10).

**<u>Additional Medical Expert Testimony or Consultative Examination Was Not Required</u>**

Plaintiff contends the ALJ's RFC is not supported by substantial evidence because medical expert testimony or an additional consultative examination was needed for him to make a determination. (Doc. 14, at 7-8).

Under Social Security law, "[t]he burden of providing a . . . record . . . complete and detailed enough to enable the Secretary to make a disability determination [] rests with the claimant." *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.3d 211, 214 (6th Cir. 1986). "[T]he regulations do not *require* an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Id.*

The ALJ has the "discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (citing 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests." (emphasis added)).

Additionally, the regulations give an ALJ discretion to determine whether to consult a medical expert. 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii) (An ALJ "*may* . . . ask for and consider opinions from medical experts on the nature and severity of [a claimant's] impairment" (emphasis added)). "The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the [ALJ], who is not a medical professional, may understand." *Fullen v. Comm'r of Soc. Sec.,* 2010 WL 2789581, at *12 (S.D.

Ohio) (citing *Richardson v. Perales*, 402 U.S. 389, 408 (1972)).

Plaintiff primarily argues that after discounting the state agency and consultant opinions, the ALJ was left in a position to make medical judgments about Plaintiff's functioning. (Doc. 14, at 7-8) However, this argument fails for two reasons. First, the ALJ gave these opinions "some" weight, he did not completely reject them. Second, the ALJ found the record supported limitations in addition to those provided by the state agency physicians and consultive examiner. (Tr. 33). An ALJ is certainly permitted to find more restrictive functional limitations after assessing the entire record in order to accommodate Plaintiff's symptoms. *Winn v. Comm'r of Soc. Sec.,* 2012 WL 1088704, at *10 (N.D. Ohio 2012) *affirmed and adopted* 2013 WL 1088629 (N.D. Ohio 2013).

Here, the ALJ exercised his discretion and did not call a medical expert or order an updated consultive examination.  Further, a consultive examination or medical expert was not needed because the medical evidence in Plaintiff's case was not complex, conflicting, or confusing such that the ALJ could not make a determination. 20 C.F.R. § 416.919a;  HALLEX I-2-5-34 (2005). For instance, the ALJ addressed and described Plaintiff's testimony, conservative treatment regimen, activities of daily living, mild to moderate physical examination findings, normal gait, normal motor strength, pain relief from epidural injections and prescription medication, physical therapy non-compliance, and diagnostic testing. (Tr. 32-34).

In sum, the ALJ properly exercised his discretion in not obtaining a consultive report or medical expert testimony as there was clear and sufficient evidence to make a determination.

**Sentence Six Remand**

Plaintiff argues new evidence presented to the Appeals Council warrants a sentence six remand pursuant to  42 U.S.C. § 405(g).

A claimant must establish two prerequisites before a district court may order a sentence six remand for the taking of additional evidence. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2001). In particular, a claimant must show: (I) the evidence at issue is both "new" and "material"; and (ii) there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir.1996). The party seeking a remand bears the burden of showing that these two requirements are met. *See Foster*, 279 F.3d at 357.

The Sixth Circuit explains "evidence is new only if it was not in existence or available to the claimant at the time of the administrative proceeding." *Hollon*, 447 F.3d at 483-84 (citing *Foster*, 279 F.3d at 357). Such evidence, in turn, is deemed "material" if "there is a probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with new evidence." *Foster*, 279 F.3d at 357.

Plaintiff contends Dr. Mehta's report is "new and material" and there was good cause for failing to provide it because it "was authored after the hearing date and provided to the administration" as timely as possible. (Doc. 14, at 10). However, Plaintiff's argument fails because she erroneously described the report as being prepared after the hearing date. (Doc. 14, at 9-10). Indeed, Dr. Mehta prepared his physical assessment form on July 6, 2011, more than a month before the administrative hearing held August 12, 2011. Therefore, the report does not qualify as new, and Plaintiff has failed to show good cause for failing to provide the report to the ALJ.[2]

The report is also not material because Plaintiff has not demonstrated the ALJ would have

---

2. At the ALJ hearing, the ALJ asked Plaintiff's attorney if there were "any new exhibits that need[ed] to be offered into evidence". (Tr. 42). He replied, "[n]o, sir." (Tr. 42).

11

determined Plaintiff was disabled if he had considered Dr. Mehta's report. First, the "[ultimate] determination of disability is the prerogative of the [Commissioner], not the treating physician[.]" *Houston v. Sec'y of Heath and Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Next, there was substantial evidence submitted to the Appeals Council at odds with Dr. Mehta's report. For instance, an EMG taken June 30, 2011 showing no evidence of lumbar radiculopathy, peripheral nerve entrapment, or neuropathy (Tr. 367); an unremarkable physical examination with Dr. Baltes on July 18, 2011(Tr. 349); and an August 24, 2011 discharge summary sent to Dr. Mehta explaining Plaintiff wished to discontinue therapy because she was "doing fine" (Tr. 354). Accordingly, even if the ALJ had considered Dr. Mehta's report, there is no basis to conclude his determination would have been any different.

## CONCLUSION

Following review of the arguments presented, the record, and applicable law, the Court finds substantial evidence supports the ALJ's decision. Therefore, the Court affirms the Commissioner's decision denying benefits.

IT IS SO ORDERED.

       s/James R. Knepp, II  
United States Magistrate Judge